

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

RACHEL IRIS HARBECK,

       Plaintiff,

v.

                                    Civil Action No. 4:10cv140

LINDA BATCHELOR SMITH, and

MICHELE WINSTON, and

WILLIAM BOYLE, Esquire,

       Defendants.

## OPINION AND ORDER

    This matter is before the Court on motions to dismiss filed by William Boyle ("Boyle"), Linda B. Smith ("Smith"), and Michele Winston ("Winston," and collectively "Defendants"), requesting the Court dismiss Rachel Harbeck's ("Harbeck" or "Plaintiff") Second Amended Complaint[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 8, 2011, the Court held oral argument on motions to dismiss Plaintiff's

---

[1] The Court will refer to Plaintiff's complaint as the Second Amended Complaint throughout this Opinion and Order because that is the title given to it by Plaintiff. In actuality, Plaintiff's Second Amended Complaint is the first amended complaint that this Court has considered. Plaintiff did, at one point, attach a document titled "Amended Complaint" to her motion for leave to amend, however, after oral argument, the Court instructed her that it would not consider that document and instructed her to file a new amended complaint.

original Complaint, as well as on Plaintiff's motion for leave to amend her original Complaint. The Court granted Plaintiff's request for leave, Plaintiff filed her Second Amended Complaint, and Defendants responded by filing the motions to dismiss noted above. After examining those motions, the associated briefs, the Second Amended Complaint, and the points raised during oral argument, for the reasons set forth below, the Court **GRANTS** Boyle's motion to dismiss. As to Smith and Winston, the Court **GRANTS IN PART AND DENIES IN PART** each of their motions to dismiss.

## I. Facts and Procedural History[2]

### A. Facts

Plaintiff initiated this lawsuit in response to events occurring in late 2009 and early 2010. These events resulted in Plaintiff being unlawfully imprisoned, according to Plaintiff, for eighty-seven (87) days.

On or about October 22, 2009, Plaintiff was arrested for "threatening to burn her mother's house" in violation of section

---

[2] The facts recited here are drawn from Plaintiff's Second Amended Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion to dismiss. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009) ("...in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

18.2-83 of the Code of Virginia. Second Am. Compl. ¶ 7. Plaintiff was immediately incarcerated in the Hampton Roads Regional Jail. Second Am. Compl. ¶ 8. Shortly thereafter, Boyle, a public defender in the City of Hampton, Virginia, was appointed by the Juvenile and Domestic Relations District Court of the City of Hampton to represent Plaintiff in that state court criminal case. Compl. ¶ 4, 9. On or about December 22, 2009, the charge against Plaintiff was certified to the grand jury by the Juvenile and Domestic Relations District Court. However, Plaintiff was never actually indicted for the offense by the Circuit Court grand jury.

On or about that same day, December 22, 2009, the Second Amended Complaint alleges that an Assistant Commonwealth's Attorney for the City of Hampton, Charisse Mullen, determined that the Commonwealth would not pursue an indictment in the case, despite the charge having been certified for such an indictment. Second Am. Compl. ¶ 11; Ex. A. It is this decision that set in motion the events upon which Plaintiff bases her Second Amended Complaint.

After Mullen made this determination, she allegedly sent a letter to Boyle informing him of the decision. A copy of that letter was also sent "to the attention of Smith," the elected Clerk of Court for the Circuit Court of the City of Hampton, at the "office of the Clerk of Court for the Circuit Court of the

City of Hampton, Virginia." Second Am. Compl. ¶¶ 2, 11. Plaintiff has attached a copy of this letter to the Second Amended Complaint. In pertinent part, it advised that the Commonwealth would not seek indictment of Plaintiff on the threatening to burn charge and it was to serve as notice to the "Clerk's Office" that Plaintiff "may be released of any bond in effect that is related to the" threatening to burn charge. Compl. ¶ 11; Ex. A. According to the Second Amended Complaint, a copy of this letter, or another letter containing similar information, was subsequently sent on a separate occasion to the office of the Clerk of Court by Mullen. Second Am. Compl. ¶ 13. The Second Amended Complaint alleges that this subsequent letter was received by Smith, and by Winston, a Deputy Clerk of Court for the Circuit Court of the City of Hampton, on December 22, 2010.[3] Id. Thereafter, Plaintiff notified Boyle on two separate occasions that she was supposed to be released, each time to no avail. Second Am. Compl. ¶ 14. Additionally, the Second Amended Complaint alleges that "on or about January 4, 2010, Smith and/or Winston received a Criminal Order dated January 4, 2010, from Circuit Court Judge Wilford Taylor, which stated that

---

[3] The Court is unsure how to interpret this statement. If Plaintiff intended to state that the letter was received on December 22, 2009 (rather than 2010), then such receipt would not be "subsequent" to the letter Mullen sent on December 22, 2009, discussed earlier. If Plaintiff intended to state that the letter was received on December 22, 2010, this would be nine months after her eventual release from jail.

4

no indictment was presented against Plaintiff on the charge for which she was incarcerated" and therefore she is to "be released from any bond" applicable to the threatening to burn charge. Second Am. Compl. ¶ 15; Ex. B.

According to the Second Amended Complaint, as of December 22, 2009, there was no longer any legal basis for keeping Plaintiff incarcerated. Second Am. Compl. ¶ 17. However, "none of the Defendants notified personnel at the Jail that there was no longer any legal basis for keeping Plaintiff incarcerated, even though Defendants knew she was incarcerated." Second Am. Compl. ¶ 20. Plaintiff was eventually released from jail on March 19, 2010 when Hampton Public Defender James Gochenour, Boyle's supervisor, "learned of the situation, went to the office of the Clerk of Court for the Circuit Court of the City of Hampton, Virginia, and set Plaintiff's release in motion." Second Am. Compl. ¶ 23. In total, Plaintiff alleges that she spent eighty-seven days in jail, after all the charges had been dismissed against her, because Defendants failed to take any action to release her.

### B. Procedural History

Plaintiff filed a Complaint in this Court against only Defendants Smith and Boyle on October 28, 2010. In response to this Complaint, both Boyle and Smith filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on

November 22, 2010 and December 8, 2010 respectively. Docket Nos. 6 & 9. In turn, Plaintiff filed a motion for leave to amend her Complaint on January 21, 2011. In this motion, Plaintiff informed the Court that she wished to amend her Complaint because "[c]ertain basic facts were inadvertently omitted from the Complaint" and "Plaintiff needs to add a Fourth Amendment violation and discard the Eighth Amendment violation." Mot. Leave to Amend 2; Docket No. 20. On June 8, 2011, the Court held a hearing on the motions discussed above. The next day, the Court signed an Order granting Plaintiff leave to amend her Complaint, and, given the anticipated amended complaint, deemed "Defendants' previous Motions to Dismiss terminated." Docket No. 32.

On June 23, 2011, Plaintiff filed her Second Amended Complaint. In this Second Amended Complaint, in addition to making the factual and legal changes for which she requested leave, she also added Winston as an additional Defendant. This Second Amended Complaint asserts five counts against Defendants, though, each count does not assert a claim against each Defendant. In Count I, Plaintiff brings a claim against each Defendant, under 42 U.S.C. § 1983, claiming that each Defendant violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution. In Count II, Plaintiff charges each Defendant with false imprisonment under the laws of

the Commonwealth of Virginia.   In Count III, Plaintiff accuses Boyle of legal malpractice with respect to his role in her alleged unlawful detention.   In Count IV, Plaintiff asserts a cause of action for negligence against Smith and Winston. Finally, in Count V, Plaintiff asserts a cause of action for punitive damages against all Defendants.   In response to these allegations, Defendants Smith and Boyle once again filed motions to dismiss.  Docket Nos. 34 & 36.  Defendant Winston, as a newly added party, also filed a motion to dismiss shortly after Smith and Boyle.  Docket No. 45.  The Court considers these motions below.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A court considering a motion to dismiss filed pursuant to Rule 12(b)(6) must assess the legal sufficiency of the allegations in the plaintiff's complaint.  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Requiring a claim be plausible does not impose a probability requirement at the

pleading stage.  Id. at 556.  However, it does ask for more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "...give the defendant fair notice of what the...claim is and the grounds upon which it rests...."

Bell Atl. Corp., 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." Id. at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance...dismissals based on a judge's disbelief of a complaint's factual allegations." Id. at 556 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Where a motion to dismiss a civil rights claim is filed, the Court "must be 'especially solicitous' of the wrongs alleged." It "must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988)(internal citation omitted).

### III. Discussion

#### A. Boyle's Motion to Dismiss

##### 1. Count I - 42 U.S.C. § 1983

Under 42 U.S.C. § 1983,

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress....

42 U.S.C. § 1983. According to the Fourth Circuit, "[a] federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'"   Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).  With these elements in mind, in Boyle's motion to dismiss he argues that Plaintiff's § 1983 claim against him must be dismissed because he is not a state actor who acted under color of state law for purposes of § 1983.  Additionally, Boyle contends that even if he is a state actor for § 1983 purposes, he has absolute and qualified immunity from such a claim.  Further, Boyle argues that Plaintiff has failed to plead

sufficient facts to support a Fourth or Fourteenth Amendment violation. The Court will first address Boyle's argument that he is not a person acting under color of state law. If Boyle is correct in that assertion, the Court need not address any of Boyle's additional defenses to Plaintiff's § 1983 claim because the lack of state action would be dispositive on the issue.

Both Plaintiff and Boyle begin their discussion of whether a public defender is acting under the color of state law with the Supreme Court case of Polk County v. Dodson, 454 U.S. 312 (1981). In Polk County, a public defender was appointed to represent Dodson in the appeal of his conviction for robbery. Id. at 314. However, during the course of this representation, his counsel concluded that Dodson's claims were frivolous and she moved for permission to withdraw. Id. Before the district court, Dodson argued that his lawyer's actions, "especially her motion to withdraw, had deprived him of his right to counsel, subjected him to cruel and unusual punishment, and denied him due process of law." Id. at 315.

The Polk County Court began its analysis with United States v. Classic, 313 U.S. 299 (1941), which held that "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk Cnty., 454 U.S. at 317-18 (quoting Classic, 313 U.S. at 326).

With that standard in mind, the Supreme Court concluded that the role of the public defender, as a representative of the client, "entailed functions and obligations in no way dependent on state authority."  Id. at 318.  The Court continued,

> in our system a defense lawyer characteristically opposes the designated representatives of the State....[The system] posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interests of his client."  This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

Id. at 318-19 (citations omitted).  As a result, the Court concluded "that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Id. at 325.  However, the Court took heed to note that it did not suggest "that a public defender never acts in that role."  Id. at 324-25.  For example, the Court indicated that a public defender acts under color of state law "when making hiring and firing decisions on behalf of the State" and possibly "while performing certain administrative and possibly investigative functions."  Id. at 325.

In reaching this conclusion, the Supreme Court rejected the notion that a public defender is a state actor merely because the public defender is employed by the state.  The Court held that the fact that the state is a public defender's employer is

12

a relevant factor, but that factor alone is "insufficient to establish that a public defender acts under color of state law." Id. at 321. See Mentavlos v. Anderson, 249 F.3d 301, 312 (4th Cir. 2001) (citations omitted) (characterizing the Polk County decision as "holding that actions of a public defender employed by the State were private despite public employment because a public defender does 'not act on behalf of the State; he is the State's adversary.'").

The Supreme Court elaborated on its Polk County decision in several subsequent cases. In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), the Court noted that in Polk County it had concluded "that a public defender, although a state employee, in the day-to-day defense of his client, acts under canons of professional ethics in a role adversarial to the State." Id. at 935 n.18. "Accordingly, although state employment is generally sufficient to render the defendant a state actor under our analysis, it was 'peculiarly difficult' to detect any action of the State in the circumstances of that case." Id. (citations omitted). In Georgia v. McCollum, 505 U.S. 42 (1992), the Supreme Court further explained its holding in Polk County. There, it held that Polk County stood for the premise that the adversarial relationship between a public defender and the state "prevented the attorney's public employment from alone being sufficient to support a finding of state action." Id. at 54

13

(emphasis in original).   The McCollum Court went on to conclude that in order to determine whether an action under color of state law has taken place, one must look at the "nature and context of the function [the public defender] is performing." Id.

In the present case, Plaintiff asserts that Boyle was acting under color of state law when he failed to take action to procure Plaintiff's release from jail.   She alleges that she "notified Boyle in writing, several months prior to her release, on two different dates that she was still incarcerated," Second Am. Compl. ¶ 14, that Boyle "had a duty to notify personnel at the Jail that there was no longer any legal basis for keeping Plaintiff incarcerated," Second Am. Compl. ¶ 18, and that Boyle "had a duty to facilitate or secure Plaintiff's release from the Jail." Second Am. Compl. ¶ 19.   However, as a result of Boyle's alleged "gross negligence and deliberate indifference to the Plaintiff's right to be released," Second Am. Compl. ¶ 28, Plaintiff remained illegally incarcerated for eighty-seven days. Even assuming that Plaintiff's allegations are true, which the Court must do when evaluating a motion to dismiss under Rule 12(b)(6), the Court concludes for the following reasons that Plaintiff has failed to plead facts supporting the conclusion that Boyle was acting, or failing to act, under color of state law.

14

While Plaintiff recognizes the general rule established in Polk County that public defenders do not act under the color of state law when engaging in the representation of their client, she argues that this case falls within one of the exceptions mentioned in Polk County. Specifically, Plaintiff asserts that Boyle was performing an administrative function, and, therefore, he was acting under color of state law. The cases Plaintiff cites for this proposition, however, are inapposite to the facts presently before the Court.

Plaintiff points the Court to the decision of the United States Court of Appeals for the Ninth Circuit in Miranda v. Clark County, Nevada, 319 F.3d 465 (9th Cir. 2003). In that case, the administrative head of the county public defender's office, in managing the office's resources, instituted a policy that required defendants to undergo polygraph exams, with the defendants that performed poorly on the exam having fewer resources allocated to their defense. Id. at 468-69. There, the court determined that the defendant "was acting on behalf of Clark County in determining how the overall resources of the office were to be spent" and therefore he qualified as a state actor for purposes of § 1983. Id. at 469. That case, however, has no bearing on the Court's analysis in the present case because there have been no allegations that Boyle's inaction was

15

in response to or in furtherance of a policy designed to manage state administrative concerns.

Plaintiff also cites to Powers v. Hamilton County Public Defender Commission, 501 F.3d 592 (6th Cir. 2007), where the Sixth Circuit concluded that the public defender's actions in that case were under the color of state law. However, in Powers, the plaintiff "allege[d] that the Public Defender engage[d] in an across-the-board policy or custom of doing nothing to protect its indigent clients' constitutional rights not to be jailed as a result of their inability to pay court-ordered fines." Id. at 612. To the Sixth Circuit, this distinguished the case from the allegations in Polk County. In Powers, the plaintiff did "not seek to recover on the basis of the failures of his individual counsel, but on the basis of an alleged agency-wide policy or custom of routinely ignoring the issue of indigency in the context of non-payment of fines." Id. It was that allegation of an unconstitutional policy or custom that the court eventually determined was an allegation of state action. Id. at 613. If such a policy existed, the court concluded that the public defender would be "serving" the state's interests in that context, rather than acting as the state's adversary. Id. In the present case, Plaintiff has made no allegation that Boyle was acting, or failing to act, pursuant to an official policy or custom, or that Boyle was "serving" the

16

state in his alleged malfeasance.  Moreover, unlike in _Powers_, no allegations indicate that there was an administrative purpose behind Boyle's alleged failure to act.  Consequently, the Court also finds _Powers_ uninformative on the subject of whether Boyle was acting under color of state law.  Therefore, the Court concludes that none of the specific exceptions mentioned in _Polk County_ apply in the present case.

However, the Court cannot end its analysis by merely concluding that the exceptions specifically mentioned in _Polk County_ do not apply.  _McCollum_ counsels that the Court must also look to whether the nature and context of Boyle's alleged actions indicate that Boyle was acting under color of state law.[4] In Plaintiff's Second Amended Complaint, there are no allegations indicating that Boyle was acting at the behest of the state or pursuant to a policy or custom promulgated by the state.  Moreover, nowhere in the Second Amended Complaint does Plaintiff allege that Boyle's asserted failure to obtain Plaintiff's release was caused by any power Boyle "'possessed by

---

[4] Implicitly, the actions that could fall within the exceptions noted in _Polk County_ are the type of actions that, by their very nature and context, can be said to "serve" the state or are performed pursuant to power possessed by virtue of state law. However, the exceptions noted in _Polk County_ are not the _only_ types of such activities.  Therefore, even though the Court has concluded that the _Polk County_ exceptions do not apply to the current case, it still must look to the Second Amended Complaint to examine whether Plaintiff has alleged actions that by their nature and context can be said to have been taken under color of state law.

virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk Cnty., 454 U.S. at 317-18 (quoting Classic, 313 U.S. at 326). Nor does the Second Amended Complaint allege, in any manner, that Boyle's inactions were serving a state interest. As a result, the Court concludes that Boyle was not acting under the color of state law when he allegedly failed to take action to procure Plaintiff's release from incarceration. Therefore, Count I of Plaintiff's Second Amended Complaint, which alleges constitutional violations under § 1983, is **DISMISSED** as to Boyle.

### 2. Count II - False Imprisonment

Plaintiff's Second Amended Complaint, supported by the same factual underpinnings as the allegations discussed above, also alleges that "Plaintiff sustained and endured a direct restraint of her physical liberty without adequate legal justification" and "[e]ach Defendant caused, induced, aided, assisted, and/or encouraged personnel at the Jail to directly restrain Plaintiff's physical liberty without adequate legal justification." Second Am. Compl. ¶¶ 31-32.

While the Court has subject matter jurisdiction over the § 1983 claims because they raise a federal question, the Court also has supplemental jurisdiction over the remaining, non-federal claims, such as this false imprisonment claim, on the ground that these claims are so related to the federal claims

18

that they can be considered part of the same case or controversy. See 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...."). When analyzing such state court claims, the Court applies federal law in analyzing procedural issues and applies the legal rules that would be applied by the Virginia courts when analyzing substantive issues of law. See Felder v. Casey, 487 U.S. 131, 151 (1988) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945)) ("Under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'"). With respect to tort claims, such as false imprisonment, "Virginia applies the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of action." Dreher v. Budget Rent-A-Car Sys., Inc., 272 Va. 390, 395 (2006) (citations omitted). Therefore, since Plaintiff has alleged that she was unlawfully jailed in Virginia, with no indication that any action or inaction took

place outside of the Commonwealth, the Court will apply the substantive law of Virginia.

Under Virginia law, false imprisonment is the "'the direct restraint by one person of the physical liberty of another without adequate legal justification.'" Jordan v. Shands, 255 Va. 492, 497 (1998) (quoting W.T. Grant Co. v. Owens, 149 Va. 906, 921 (1928)). It is "'a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion.'" Id. (quoting W.T. Grant Co., 149 Va. at 921). "To maintain an action for false imprisonment it is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover." Zayre of Va., Inc. v. Gowdy, 207 Va. 47, 51 (1966) (citations omitted).

In the present case, Plaintiff's allegation of false imprisonment fails to state sufficient facts necessary to overcome a motion to dismiss under Rule 12(b)(6) because Plaintiff has not plausibly alleged that Boyle directly restrained Plaintiff's physical liberty. While someone certainly directly restrained Plaintiff by keeping her locked in a jail cell, the Second Amended Complaint shows that the person was not Boyle. Plaintiff, perhaps recognizing as much, asserts that Boyle is liable because he "caused, induced, aided,

20

assisted, and/or encouraged" the jail to directly restrain Plaintiff. Second Am. Compl. ¶ 32. See Mullins v. Sanders, 189 Va. 624, 630 (1949) ("Moreover, any person who causes, induces, aids, assists, or encourages an officer to delay unreasonably in bringing the arrested person before the committing judicial officer is likewise liable for such unlawful imprisonment."). However, no facts in the Second Amended Complaint support such a statement. The quoted language from Mullins is based upon a statement in Sands & Co. v. Norwell, 126 Va. 384, 396 (1919), which deals with actions of defendants who directly participated in the arrest of the plaintiff and were "active participant[s]" in all that was done in connection with the prosecution of plaintiff up to the time he was released. At best, Plaintiff's Second Amended Complaint alleges that Boyle could have helped remedy Plaintiff's situation, but either negligently or with deliberate indifference failed to take action. Such a pleading reflects facts far different from Sands and fails to satisfy the direct restraint element necessary for an actionable false imprisonment claim. As a result, the Court **DISMISSES** Plaintiff's claim of false imprisonment against Boyle.

### 3. Count III - Legal Malpractice

#### a. Elements

Plaintiff's Second Amended Complaint also alleges legal malpractice against Boyle. For the same reasons that the Court

applied Virginia law to the false imprisonment claim, the Court will apply Virginia law to Plaintiff's legal malpractice claim. Under Virginia law, "'an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract.'" O'Connell v. Bean, 263 Va. 176, 181 (2002) (quoting Oleyar v. Kerr, 217 Va. 88, 90 (1976)). "A cause of action for legal malpractice has three separate elements: 1) the existence of an attorney-client relationship creating a duty; 2) a breach of that duty by the attorney; and 3) damages that were proximately caused by the attorney's breach of duty." Williams v. Joynes, 278 Va. 57, 62 (2009) (citing Shipman v. Kruck, 267 Va. 495, 501 (2004)). "A plaintiff in a legal malpractice action bears the burden of proving all three elements." Id. "[T]he fact of negligence alone is insufficient to support a recovery of damages. The client must prove that the attorney's negligence proximately caused the damages claimed." Campbell v. Bettius, 244 Va. 347, 352 (1992) (citations omitted).

In the present case, the Second Amended Complaint alleges that Boyle owed Plaintiff a duty to facilitate and secure Plaintiff's release from jail once he was informed that there was no longer any legal basis for her incarceration. Second Am. Compl. ¶ 35. Further, the Second Amended Complaint alleges that Boyle breached that duty when he failed to take such action.

22

Moreover, Plaintiff asserts that "[a]s a direct and proximate result of [Boyle's inaction]...Plaintiff remained incarcerated for a period of approximately 87 days." Second Am. Compl. ¶ 22. While Plaintiff's Second Amended Complaint clearly pleads the requisite legal elements of a malpractice claim, it is a close call as to whether the factual allegations support one of the elements pled – proximate causation.

Under Virginia law, "a 'proximate cause' is an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." Joynes, 278 Va. at 62 (citing Williams v. Le, 276 Va. 161, 167 (2008)). "There may be more than one proximate cause of an event." Jenkins v. Payne, 251 Va. 122, 128 (1996) (citing Panousos v. Allen, 245 Va. 60, 65 (1993)). "In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." Id. at 129 (citations omitted). "An intervening act will never be deemed a superseding cause if the intervening act was set in motion by the initial tortfeasor's negligence." Joynes, 278 Va. at 63 (citations omitted).

The parties have, or could have, made reasonable arguments on both sides of the proximate cause issue in this case. On the one hand, Plaintiff could argue (although she failed to present significant arguments on this subject in her brief) that without Boyle's alleged negligence, her injury would not have occurred. In support of this position, Plaintiff's Second Amended Complaint indicates that "Plaintiff was released from the Jail on March 19, 2010 after Boyle's supervisor...learned of the situation, went to the office of the Clerk of Court for the Circuit Court of the City of Hampton, Virginia, and set Plaintiff's release in motion." Second Am. Compl. ¶ 23. Such a statement, which must be viewed in the light most favorable to Plaintiff at this stage of the litigation, indicates that Boyle had the ability to indirectly effectuate Plaintiff's release and his failure to take action contributed to her incarceration. On the other hand, Boyle argues in his brief that the ultimate cause of Plaintiff's incarceration is the alleged negligence of members of the Clerk's office. According to Boyle, the sole cause of Plaintiff's incarceration was the failure of court personnel to follow the instruction of the Commonwealth's Attorney and comply with the court order directing that Plaintiff be released of her bond. Since Boyle was not part of that sequence of events, he argues that he cannot be the proximate cause.

24

After considering these possibilities, and the applicable pleading standard at this stage of the litigation, the Court concludes that Plaintiff has plausibly alleged that Boyle was a proximate cause of her incarceration.   The Court certainly recognizes that, based on the allegations in the Second Amended Complaint, Boyle alone could not have single-handedly procured Plaintiff's release.  However, based on the facts alleged in the Second Amended Complaint, the Court cannot hold that as a matter of law Plaintiff's incarceration would have continued for the duration that it did without any negligence on the part of the Defendant.  Since Plaintiff alleges that Boyle was continually negligent from December 22, 2009 until the date of her eventual release, whether such continued negligence was the proximate cause of any of Plaintiff's injury is an issue of fact to be resolved at a later time.

### b. State Law Immunity

In light of the Court's conclusion that Plaintiff's legal malpractice claim against Boyle should not be dismissed for a failure to sufficiently plead the requisite elements of such a claim, the Court also must assess whether the claim should be dismissed on an alternative theory – namely, that Boyle possesses governmental immunity from such a claim.  In Boyle's brief, he argues that precedent from four different circuit courts and the application of Virginia's four-factor test

regarding immunity strongly counsel in favor of a finding that Boyle is immune from Plaintiff's legal malpractice claim.

When assessing whether a government employee is entitled to immunity from a state law claim, Virginia courts must analyze the facts under a four-part test first utilized in James v. Jane, 221 Va. 43, 53 (1980).[5]  According to that test, when assessing an employee's immunity, courts look to (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. Messina v. Burden, 228 Va. 301, 313 (1984) (citing James, 221 Va. at 53).  In Boyle's brief, he cites to three circuit court cases that, in applying that test, concluded that public defenders are often entitled to sovereign immunity from state law claims.

For example, in Oliver v. Langer, 32 Va. Cir. 45 (Richmond 1993), the court held that the Commonwealth had a very important

---

[5] An employee's immunity from state law claims is derivative of the employee's employer's immunity.  Therefore, before determining whether an employee is entitled to this derivative immunity, a court must first determine whether, in fact, the employer is an immune body.  In the present case, the parties do not dispute that a public defender is an employee of the state, Oliver v. Langer, 32 Va. Cir. 45, 45 (Richmond 1993), and that the state is generally immune, absent waiver, from many types of claims.  Therefore, the Court need not conduct the first level of analysis and can proceed to a discussion of the four-factor test for determining an employee's derivative immunity.

interest in providing indigents with counsel, especially given a defendant's constitutional right to counsel in certain circumstances.  Moreover, the Court concluded that the state has significant control over a public defender because a public defender "has no authority to choose her own clients or to refuse to represent a client assigned to her."  Id. at 45-46. The Court also weighed the fact that clients do not pay for the services of a public defender, but rather, those services are paid for by the state.  Further, the court concluded that a public defender follows certain standard administrative procedures during the course of the representation and is subject to the supervision of more senior supervisors, who are employees of the state.  Id. at 46.  As a result, the circuit court held that the James v. Jane factors counseled in favor of a finding of sovereign immunity.  Similar analysis and conclusions can be found in two other cases cited by Boyle.  See Wenzler v. Hartsoe, 32 Va. Cir. 334, 334-35 (Suffolk 1994); Parker v. Berry, 37 Va. Cir. 511, 511-12 (Virginia Beach 1992).

The fourth case cited by Boyle is of a slightly different stripe.  In Adkins v. Dixon, 37 Va. Cir. 307 (Augusta 1995), the Circuit Court of Augusta County, Virginia held that court-appointed attorneys have immunity for legal malpractice claims. Id. at 315.  However, on appeal, the Supreme Court of Virginia found that the circuit court erred on this point.  Adkins v.

27

Dixon, 253 Va. 275, 281 (1997).  In the Supreme Court's opinion, it analyzed the role of a court-appointed attorney under Virginia's four-part test and concluded that "the Commonwealth had almost *no* control over the pleadings and defense tactics employed by [the court-appointed attorney].    Id. at 280. Indeed, according to the Court, any control on the part of the Commonwealth beyond requiring ethical conduct would compromise a lawyer's ability to exercise independent judgment on behalf of the client.    Id. at 281.  As a result, the Supreme Court held that immunity was improper in that case.  When looking at these decisions collectively, the operative question for this Court becomes, whether, as Plaintiff argues, the circuit court cases, all decided before Adkins, and all involving attorneys employed by Virginia as public defenders, "have effectively been overruled by Adkins."  Mem. Opp'n Boyle's Mot. Dismiss. 6.

The Court finds that Adkins does not overrule those prior decisions.  Although those circuit court cases are not binding on this Court, the Court is persuaded by their logic and concludes that public defenders, such as Boyle, are immune from malpractice lawsuits based on alleged negligence.  As mentioned in those cases, the Commonwealth has an important interest in providing public defender services, especially in light of an indigent's constitutional right to counsel in certain criminal prosecutions.  Further, the state has significant control over

the caseload of public defenders, the training of public defenders, the administrative organization of public defenders' offices, and the salary of such employees. See Va. Code Ann. § 19.2-163.01.   While it is true, as it was with the court-appointed counsel in Adkins, that the public defender has an adversarial relationship with the Commonwealth and thus the state cannot reasonably control the entire course of a public defender's representation of the client, such discretion on the part of a public defender does not overcome, with respect to immunity analysis, the significant state control discussed above.   Adkins dealt with a court-appointed attorney, whereas the present case deals with a state employee – subject to controls above and beyond those of court-appointed counsel. Indeed, this is the same kind of distinction noted by the Adkins Court when it observed as follows: "In contrast to Lohr, in which the Commonwealth controlled the medical procedures the state-employed doctor could perform, id., the Commonwealth had almost *no* control over the pleadings and defense tactics employed by Dixon."   Adkins, 253 Va. at 280.

Consequently, the Court holds that Boyle, as a public defender, is immunized from Plaintiff's legal malpractice claim to the extent that it is based on simple negligence.   However, that does not necessarily immunize Boyle from Plaintiff's entire malpractice claim.   "In Virginia, a government agent entitled to

29

the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence." <u>Colby v. Boyden</u>, 241 Va. 125, 128 (1991). Therefore, if Plaintiff's malpractice claim had alleged gross negligence, Boyle would not be completely immunized from that claim. However, Plaintiff's malpractice claim only speaks of simple negligence. Second Am. Compl. ¶ 36. Although other parts of Plaintiff's Second Amended Complaint speak of gross negligence, e.g. Second Am. Compl. ¶ 28, those paragraphs have not been incorporated into the malpractice claim. <u>See</u> Second Am. Compl. ¶ 33. As a result, the Court finds that Boyle is immune from Plaintiff's legal malpractice claim and therefore **DISMISSES** Count III of the Second Amended Complaint.

### 4. Count V - Punitive Damages

In Count IV of Plaintiff's Second Amended Complaint, she states that each Defendant's acts or omissions "constitute(s) misconduct with actual malice, or such recklessness or negligence as to evince a conscious disregard of Plaintiff's rights." Second Am. Compl. ¶ 40. Defendant Boyle contends that Plaintiff's allegations regarding Boyle's alleged legal malpractice do not support such damages.

Since the Court has dismissed Plaintiff's claims against Boyle above, there are no remaining claims against Boyle upon

which Plaintiff could seek punitive damages. As a result, the Court **GRANTS** Boyle's motion to dismiss Count V of Plaintiff's Second Amended Complaint.

## B. Smith's Motion to Dismiss

### 1. Count I - 42 U.S.C. § 1983

Like Plaintiff's claims against Boyle, Plaintiff's Second Amended Complaint also asserts causes of action against Smith under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment rights. In response to these allegations, Smith stresses several reasons as to why she believes that Plaintiff has failed to state a cause of action upon which relief can be granted. First, Smith argues that the Fourth Amendment is not applicable to Plaintiff's claims because the injury occurred after a lawful incarceration. Second, as to Plaintiff's due process claims, Smith contends that Plaintiff has failed to allege sufficient actionable conduct on the part of Smith, and even if such conduct occurred, Smith argues that she is immune from § 1983 claims for her actions as a clerk of court. The Court will address Smith's contention regarding the Fourth Amendment prior to analyzing Smith's asserted grounds for dismissal of the due process claims against her.

### a. Fourth Amendment Applicability

Plaintiff concedes that the City of Hampton had a proper legal basis to arrest and incarcerate her on the threatening to

31

burn charge prior to the Commonwealth's decision to not seek an indictment against her. Second Am. Compl. ¶ 17. Therefore, Plaintiff's Fourth Amendment claim is solely based on her continued detention after December 22, 2009. Id. As explained below, these facts do not support a valid § 1983 claim based on an alleged Fourth Amendment violation.

"'Fourth Amendment claims are appropriate [only] when the complaint contests the method or basis of the arrest and seizure of the person.'" Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) (quoting Brooks v. George Cnty., Miss., 84 F.3d 157, 166 (5th Cir. 1996)) (brackets in original). "The protections offered by the Fourth Amendment do not apply if the plaintiff challenges only continued incarceration." Id. (citing Brooks, 84 F.3d at 166). Accord Luckes v. Cnty. of Hennepin, 415 F.3d 936, 939 (8th Cir. 2005) (citations omitted) ("Because Luckes was named in a valid bench warrant...his Fourth Amendment argument is thus without merit. Rather, Luckes's claim that his extended detention violated his constitutional rights is more properly analyzed under the framework of the Due Process Clause of the Fourteenth Amendment."); Armstrong v. Squadrito, 152 F.3d 564, 569 (7th Cir. 1998) (quoting Villanova v. Abrams, 972 F.2d 792, 797 (7th Cir. 1992)) ("Armstrong's Fourth Amendment claim drops out of the case because that amendment 'governs the period of confinement between arrest without a warrant and the

32

preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause.'"); <u>Riley v. Dorton</u>, 115 F.3d 1159, 1163 (4th Cir. 1997) (en banc), <u>abrogated on other grounds</u>, <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175 (2010) (internal citations omitted) ("By its own terms, the Fourth Amendment thus applies to the 'initial decision to detain an accused,' not to the conditions of confinement after that decision has been made."). Since Plaintiff does not contend that her initial arrest or incarceration ran afoul of the Constitution, but rather argues that her continued detention was unconstitutional, the Fourth Amendment is inapplicable to her claim. Therefore, the Court **DISMISSES** the Fourth Amendment component of Plaintiff's § 1983 claim. However, Plaintiff is still left with a due process claim, the merits of which will be discussed below.

b. Due Process Claims

Smith asserts two principal defenses as to why she cannot be held liable for any alleged violations of Plaintiff's constitutional rights protected by the Due Process Clause. First, Smith argues that if Plaintiff's constitutional rights were violated, Plaintiff has not alleged that Smith <u>personally</u> committed those violations or that any violations that did occur can be imputed to Smith purely by virtue of the fact that she is

33

the supervisor of the clerk's office.  Second, Smith argues that
even if certain conduct could be imputed to her, Plaintiff has
failed to allege that such conduct is of sufficient gravity to
trigger the protections of the Due Process Clause.

### i. Smith's Personal Conduct

Although Smith concedes that Plaintiff's unjustified
imprisonment for eighty-seven days is a sufficiently serious
loss of liberty so as to implicate the Constitution's Due
Process Clause, she contends, nonetheless, that Plaintiff's
Second Amended Complaint fails to allege facts supporting the
conclusion that Smith had personal knowledge of Plaintiff's
predicament and was therefore obligated to secure Plaintiff's
release.  Rather, Smith contends that the Second Amended
Complaint, at best, makes allegations regarding the conduct of
the "office of the Clerk of Court" and not "the Clerk of Court"
herself.  Mem. Supp. Smith's Mot. Dismiss 4.  As a result, Smith
contends that Plaintiff is attempting to hold Smith liable under
the doctrine of *respondeat superior*, which according to Smith,
is improper in § 1983 cases.

Smith is correct in her assertion that the doctrine of
*respondeat superior* has no applicability to § 1983 claims.
Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (citing
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978))
("...there is no respondeat superior liability under § 1983.").

34

Given that limitation, supervisors can be held liable "in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." Clark v. Md. Dep't of Pub. Safety & Corr. Servs., 316 F. App'x. 279, 282 (4th Cir. 2009) (unpublished per curiam opinion) (citing Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). With these two possible bases for liability in mind, the Court will first assess whether the Second Amended Complaint has alleged liability based on the "personal wrongdoing" of Smith.

Such "'liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'" Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd 451 F.2d 1011 (4th Cir. 1971)). To establish such personal wrongdoing, the individual "must have had personal knowledge of and involvement in the alleged deprivation of appellant's rights in order to be liable." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Although allegations of personal wrongdoing on the part of Smith are scant in Plaintiff's Second Amended Complaint, the Court cannot state at this point, when the allegations in the Second Amended Complaint are viewed in the light most favorable to Plaintiff, that she has failed to plausibly allege that Smith was personally involved in her continued detention. The Second

Amended Complaint states that the Assistant Commonwealth's Attorney sent a letter on December 22, 2009 to Boyle and a "copy thereof to the attention of Smith at the office of the Clerk of Court for the Circuit Court of the City of Hampton, Virginia." Second Am. Compl. ¶ 11. Attached to the Second Amended Complaint is a copy of this letter, which reads at the bottom, "cc: Linda Batchelor Smith, Clerk of Circuit Court." Second Am. Compl. Ex. A. Moreover, while the allegation could have been clearer, the Second Amended Complaint asserts that <u>Smith</u> also received another letter to the same effect. Second Am. Compl. ¶ 13. Lastly, as mentioned above, the Second Amended Complaint also alleges that Smith and/or Winston received a judicial order informing them Plaintiff would not be indicted and should be released of any bond applicable to the threatening to burn charge. Yet, despite the allegations of repeated notices to Smith, the Second Amended Complaint indicates that Smith failed to take action to effectuate Plaintiff's release.

Although Plaintiff has not conclusively shown that Smith had knowledge of Plaintiff's continued unlawful incarceration, she need not meet that burden at this point. Plaintiff has plausibly alleged that Smith personally received notice of the unlawful incarceration on several occasions and failed to act. Such a showing of personal knowledge is sufficient to survive a motion to dismiss. Similarly, Plaintiff has also not

36

conclusively shown that even if Smith did have knowledge of the incarceration, that she was in a position to single-handedly release Plaintiff or that her actions led to the continued incarceration. However, the Commonwealth's Attorney's letter implies that the clerk's office does play a part in the process of effectuating a prisoner's release. It states, "[b]y copy of this letter, I am notifying the Clerk's Office so that your client may be released of any bond in effect that is related to the above referenced [threatening to burn] charge." Second Am. Compl. Ex. A. Therefore, despite the fact that liability for Smith cannot rest on a theory of *respondeat superior*, Plaintiff has alleged sufficient personal involvement on the part of Smith to survive a motion to dismiss under Rule 12(b)(6).

### ii. Level of Culpability

Regardless of whether or not Smith had personal involvement in Plaintiff's incarceration, Smith contends that Plaintiff's § 1983 claim against Smith must be dismissed because the claim sounds in negligence, and negligent conduct cannot form the basis of a § 1983 action. In order to fully assess this argument, the Court must briefly review the relevant standard by which to assess Plaintiff's due process claim.

The Supreme Court has "emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of government.'" Cnty. of Sacramento

v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).  In substantive due process cases dealing with action of a specific government official, often an executive official, the Supreme Court has stated that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  Id. at 846. (quoting Collins v. Harker Heights, 503 U.S 115, 129 (1992)).  Repeatedly, the Supreme Court has spoken of conduct that underlies a cognizable due process claim as conduct that "shocks the conscience."  Id. However, determining the type of conduct that rises to that level is elusive, since the measure is "no calibrated yard stick."  Id. at 847.

"Depending on the circumstances of each case, however, 'different degrees of fault may rise to the level of conscience-shocking.'"  Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001) (quoting Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001)).  "As to 'negligently inflicted harm,' it is 'categorically beneath the threshold of constitutional due process'" and is therefore never considered conscious-shocking. Waybright v. Frederick Cnty., Md., Dep't of Fire & Rescue Servs., 528 F.3d 199, 205 (4th Cir. 2008) (quoting Cnty. of Sacramento, 523 U.S. at 849).  On the opposite side of the spectrum, conduct "'intended to injure in some way unjustifiable by any government interest'" is most likely to implicate the Due

38

Process Clause. Id. (quoting Cnty. of Sacramento, 523 U.S. at 849). With respect to conduct falling within the middle range of culpability, such conduct may have due process implications in special circumstances. Id. (citing Cnty. of Sacramento, 523 U.S. at 849). In one such special circumstance, the Fourth Circuit has held that "where the state is in a special relationship to a private individual, it acquires a duty to act on that individual's behalf and its failures to act are measured on a deliberate indifference standard." Id. at 207. Although the term "special relationship" is a term of art, it is "all but synonymous with a custodial relationship." Id. (citing DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 199-200 (1989)). "[T]hat is why a conscious disregard of the rights of prisoners, pretrial detainees, and committed mental patients have traditionally been examined for deliberate indifference." Id. Such a standard is applicable here.

In the present case, it is a close question as to whether Plaintiff has alleged that Smith's actions, or inactions, rise to the level of a constitutional violation. Smith is entirely correct in her assertion that negligence cannot form the basis of an actionable § 1983 claim. Daniels v. Williams, 474 U.S. 327, 328 (1986). However, the Court concludes that Plaintiff has alleged sufficient facts, when viewed in the light most favorable to Plaintiff, that Smith was more than negligent.

Plaintiff alleges that Smith behaved with deliberate indifference to Plaintiff's constitution rights. Second Am. Compl. ¶ 28. Plaintiff's Second Amended Complaint states that Smith was informed of Plaintiff's unlawful incarceration on at least three occasions prior to Plaintiff's eventual release. Second Am. Compl. ¶¶ 11, 13, 15. Yet, according to the Second Amended Complaint, despite multiple notifications that there was no legal basis to hold Plaintiff, Smith took no action to procure her release. Second Am. Compl. ¶ 28. While it is certainly possible that Smith's actions amount to nothing more than negligence, Plaintiff has stated a plausible claim of a higher level of culpability. As a result, Plaintiff's § 1983 claim need not be dismissed on the ground that Plaintiff has failed to state a cause of action under § 1983. Despite this conclusion, however, Smith also contends that Plaintiff's § 1983 claim fails because Smith is immune from such a lawsuit.

### iii. "Quasi-Judicial" Immunity

Smith contends that she is entitled to "quasi-judicial" immunity – immunity for non-judges engaged in certain judicial activities. In analyzing the issue of "quasi-judicial" immunity for a clerk of court, the Court begins with the Fourth Circuit case of McCray v. Maryland, 456 F.2d 1 (4th Cir. 1972), overruled on other grounds, Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995). In McCray, the Fourth Circuit analyzed "quasi-

judicial" immunity with respect to the clerk of the Baltimore City Court. In doing so, the court discussed the origin and applications of the doctrine. According to the court, "quasi-judicial" immunity is derivative of the absolute immunity enjoyed by judges in the exercise of many of their judicial duties. This absolute immunity is founded on the understanding "that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." McCray, 456 F.2d at 3 (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)). See Bradley v. Fisher, 80 U.S. 335, 347 (1872) ("For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.").

As to the reason for extending this absolute immunity, in certain situations, to "lesser judicial personnel," the Fourth Circuit noted two related, but distinct rationales. As to the first rationale, the court stated that "[t]he immunity of 'quasi-judicial' officers such as prosecuting attorneys and parole board members derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges." McCray, 456

41

F.2d at 3.  Accord Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976) ("When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges -- that is, because they, too, 'exercise a discretionary judgment' as part of their function."). Conversely, the court stated that "[w]here an official is not called upon to exercise judicial or quasi-judicial discretion, courts have properly refused to extend to him the protection of absolute judicial immunity, regardless of any apparent relationship of his role to the judicial system." McCray, 456 F.2d at 3-4.

As to the second rationale, the court noted that "[a] closely associated defense is afforded all public officers who act in obedience to a judicial order or under the court's direction." Id. at 5 (citations omitted). See Vanderwall v. Virginia, No. 1:05cv1341, 2006 U.S. Dist. LEXIS 96149, at *32 (E.D. Va. Aug. 9, 2006) (quoting McCray, 456 F.2d at 5) ("Court clerks, like defendant Johnston, are 'accorded derivative judicial absolute immunity when they act in obedience to judicial order or under the court's direction.'"). With those two bases for "quasi-judicial" immunity in mind, the Court must assess whether Plaintiff's due process violation allegations indicate either that Plaintiff's rights were violated while

Smith was performing a discretionary duty, or while Smith was acting pursuant to court direction, such that she is entitled to "quasi-judicial" immunity.

In the present case, when the allegations are viewed in the light most favorable to Plaintiff, the Court cannot conclude that Smith's alleged course of inaction was a choice within Smith's discretion or was taken pursuant to the state court's direction. As discussed above, Plaintiff's Second Amended Complaint asserts Smith received notice on several occasions that Plaintiff's incarceration was no longer legal, but she took no action in response to those warnings. See, e.g., Second Am. Compl. ¶¶ 11-15, 28. While the Second Amended Complaint does not provide the Court with any insight as to the machinations by which an unindicted prisoner is released from state custody in the City of Hampton, it also provides no indicia that Smith's failure to take action with respect to Plaintiff's release – assuming, at this point, that Smith was under a duty to take such action - was a product of discretion afforded to Smith or was in accordance with a judicial order. Therefore, while subsequently-developed facts might lead this Court to the conclusion that "quasi-judicial" immunity is proper in this case, the Court cannot reach such a conclusion at the present time based on the allegations in the Second Amended Complaint and the attachments thereto. Consequently, Smith is not

entitled to "quasi-judicial" immunity based upon the facts presently before the Court.  As a result, the Court **DENIES** Smith's motion to dismiss Count I of the Second Amended Complaint.

### 2. Count II - False Imprisonment

Plaintiff also alleges a false imprisonment claim against Smith.  However, much like the allegation against Boyle, the Second Amended Complaint fails to set forth sufficient facts to make this claim cognizable.  According to the Supreme Court of Virginia, false imprisonment is "'the direct restraint by one person of the physical liberty of another without adequate legal justification.'"  Jordan 255 Va. at 497 (quoting W.T. Grant Co. 149 Va. at 921).[6]  While Plaintiff's Second Amended Complaint alleges that she endured "a direct restraint of her physical liberty without adequate legal justification," Second Am. Compl. ¶ 31, much like Boyle, the factual allegations fail to support the notion that Smith was the one directly restraining Plaintiff.  Regardless of whether or not Smith had the ability to secure Plaintiff's release, it is clear that Smith was not the party directly restraining Plaintiff in the first instance; nor is there any allegation that Smith directed Plaintiff be

---

[6] As noted earlier, it is possible to have a cognizable false imprisonment claim against someone who does not perform the direct restraint.  However, at the very least, an individual must be an "active participant" in the restraint in order for liability to be possible.  See, e.g., Sands, 126 Va. at 396.

held past her legal date of incarceration.  Therefore, the Court **GRANTS** Defendant Smith's motion to dismiss Plaintiff's false imprisonment claim.

### 3. Count IV - Negligence

#### a. Elements

In Count IV of Plaintiff's Second Amended Complaint, she alleges that Smith is liable for negligence in the performance of her duties.  According to Plaintiff, Smith had a duty to inform the Hampton Roads Regional Jail that the Commonwealth was not seeking an indictment against Plaintiff; Smith breached that duty; and, such breach led to Plaintiff's additional eighty-seven day imprisonment.  Second Am. Compl. ¶ 38.  However, in Smith's memoranda in support of her motion to dismiss, she argues that Plaintiff has failed to specifically cite to any statutory authority imposing a duty on Smith to take action effectuating Plaintiff's release.

Under Virginia law, to establish actionable negligence, the plaintiff has "the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." <u>Atrium Unit Owners Ass'n v. King</u>, 266 Va. 288, 293 (2003) (citations omitted).  While Smith is correct in her argument that Plaintiff has not cited to any statutory authority indicating that Smith owed a "legal duty" to Plaintiff, Plaintiff's filings, at the very least, make a plausible showing

45

that such a duty exists. The Court need not look any further than the exhibits attached to Plaintiff's Second Amended Complaint. In Exhibit A, which is the letter from the Assistant Commonwealth's Attorney discussed earlier, Charisse Mullen writes, "[b]y copy of this letter, I am notifying the Clerk's Office so that your client may be released of any bond in effect that is related to the above referenced charge." Second Am. Compl. Ex. A. While the letter does not state it explicitly, it certainly implies that the clerk's office has an obligation to take action with respect to Plaintiff's bond, and therefore, presumably, if she has no other charges pending against her, her ultimate release. This same inference can be drawn from Plaintiff's additional exhibits. Exhibit B is a copy of the Criminal Order ordering that Plaintiff be released of any bond currently pending on the threatening to burn charge. Second Am. Compl. Ex. B. This order was issued on January 4, 2010 and circulated to "Clerk: mlw." Id. On that same day, Winston prepared a disposition notice, Second Am. Compl. ¶ 28 & Ex. C, directed to the applicable Sheriff, Jail Officer, or Correctional Officer, indicating that no indictment was presented with respect to Plaintiff. While these exhibits are not conclusive proof that Smith and/or Winston are integrally involved in the process by which Plaintiff should have been

released from jail, they are sufficiently indicative of a duty on the part of Smith to withstand a motion to dismiss.

### b. State Law Immunity

Regardless of whether or not Plaintiff has sufficiently stated a claim of negligence against Smith, Smith contends that she is entitled to sovereign immunity in this case because her actions, or inactions, were discretionary. The Court has already engaged in a related discussion with respect to Smith's immunity from Plaintiff's § 1983 claim. However, since the sovereign immunity argument is governed by Virginia law, while § 1983 immunity is governed by federal law, the Court must revisit several common issues here.

In _First Virginia Bank-Colonial v. Baker_, 225 Va. 72 (1983), the Supreme Court of Virginia dealt with the issue of sovereign immunity with respect to clerks of court. In that case, the plaintiff alleged that one of the deputies in the office of the clerk of court incorrectly filed a lien. _Id._ at 75. The plaintiff, however, sued the clerk of court rather than one of the deputies. At the trial level, the clerk filed a plea of sovereign immunity, which the trial court concluded was "well taken." _Id._ at 76 (internal quotations omitted). However, the Supreme Court of Virginia disagreed with such a finding. In its opinion denying sovereign immunity, it stated as follows: "the negligence underlying the [plaintiff's] claim was misfeasance of

47

a ministerial duty, and the cloak of sovereign immunity does not cover such torts."[7] Id. at 78. As a result, in the present case, to assess the applicability of sovereign immunity to Plaintiff's negligence claim against Smith, the Court must determine whether Plaintiff has alleged that Smith breached a ministerial duty.[8] If so, Smith is not entitled to the defense of sovereign immunity. See Daniels v. Williams, 748 F.2d 229, 232 (4th Cir. 1984), aff'd, 474 U.S. 327 (1986) ("It is not disputed that in Virginia at all times here pertinent a common law tort action for negligence might have been maintained against a state employee performing ministerial duties."); Heider v. Clemons, 241 Va. 143, 145 (1991) ("While every person driving a car must make myriad decisions, in ordinary driving situations the duty of due care is a ministerial obligation. The defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself."); Wynn v. Gandy, 170 Va. 590, 595 (1938) (citations omitted) ("[P]ublic officers are liable for

---

[7] Although the Supreme Court of Virginia noted in Baker that recordation of liens was a statutory duty imposed upon a clerk, there is no reason to conclude, as Smith implies in her brief, that any duty not found in statute is automatically a discretionary duty.

[8] The Court must make this determination based on the facts presently before it on the record. Of course, while Plaintiff's allegations are assumed true for these purposes, subsequently developed facts may call the allegations into question.

injury which is the result of their negligence in the performance of duties which do not involve judgment or discretion in their performance but which are purely ministerial.").

The allegations in Plaintiff's Second Amended Complaint do not indicate that the clerk's role in the process of releasing a prisoner of bond is discretionary. The order that Smith and/or Winston are alleged to have received on January 4, 2010 "orders that the defendant be released from any bond the defendant is currently under for [the relevant charge]." Second Am. Compl. Ex. B. Presumably, the clerk's office was supposed to notify the jail of Plaintiff's change in status, which would effectuate her release. Second Am. Compl. ¶ 18. Plaintiff classifies this requirement as a "ministerial function." Second Am. Compl. ¶ 38. At this point in the proceedings, and based on the allegations before the Court, Plaintiff has sufficiently alleged that Smith failed in her execution of a ministerial duty. As such, Smith is not entitled to sovereign immunity based on the allegations in the Second Amended Complaint. However, such a conclusion may change in the face of subsequently-developed facts. As a result, the Court **DENIES** Smith's motion to dismiss Count IV of Plaintiff's Second Amended Complaint, which alleges negligence against Smith.

## C. Winston's Motion to Dismiss

### 1. Procedural Considerations

Plaintiff's Second Amended Complaint asserts claims against Winston that are identical to those against Smith. However, before addressing the substance of those claims, the Court must first deal with their procedural propriety. As noted earlier, Plaintiff's original Complaint only asserted claims against Smith and Boyle. Finding this Complaint inadequate for several reasons, Plaintiff sought leave to amend. Docket No. 20. In her motion seeking leave to file an amended complaint, Plaintiff claimed such an amendment was needed because "[c]ertain basic facts were inadvertently omitted from the Complaint, which need to be added," and "[i]n addition Plaintiff needs to add a Fourth Amendment violation and discard the Eighth Amendment violation in order to reflect her liberties that were violated in this case." Mot. Leave to Amend 2; Docket No. 20. Plaintiff made no mention of adding an additional defendant to the case. On June 10, 2011, the Court granted Plaintiff's requested leave, once again, with no mention of Plaintiff adding an additional defendant. Yet, in Plaintiff's Second Amended Complaint, she added Winston as a defendant. Winston argues that the claims against her should be dismissed as a result of her "having been impermissibly joined." Winston Mem. Supp. Mot. Dismiss 6.

Rule 15 of the Federal Rules of Civil Procedure governs Plaintiff's ability to amend the Complaint. According to that Rule, if sufficient time has passed after the filing of a pleading so as to eliminate a party's ability to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff did not seek leave to amend her Complaint to add Winston as a party. Consequently, since "[f]iling an amendment to a complaint without seeking leave of court or written consent of the parties is a nullity," the Court would be well within its discretion to withhold consideration of Plaintiff's claims against Winston. Friedman v. Skokie, 763 F.2d 236, 239 (7th Cir. 1985) (citations omitted). However, "a court may deem an amended pleading submitted without permission to be properly filed, but may only do so if it determines that leave to amend, had it been sought, would have been granted." Lyddy v. Bridgeport Bd. of Educ., No. 3:06cv1420, 2008 U.S. Dist. LEXIS 45035, at *7 (D. Conn. June 10, 2008).

In making the determination as to whether leave to amend would have been granted, the Court must consider both Rules 15(a) and 20(a)(2) together. See Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010) (citations omitted) ("While some courts have concluded that Rule 15(a) does not apply to amendments seeking to add parties, most courts, including this one, have

concluded otherwise."); <u>Adkins v. Labor Ready, Inc.</u>, 205 F.R.D. 460, 462 (S.D. W.Va 2001) ("In order to amend a complaint to add additional parties after a responsive pleading has been filed, a movant must seek leave of the court pursuant to Rule 15 of the Federal Rules of Civil Procedure, and he must demonstrate compliance with either Rule 19 or Rule 20....").

With respect to the Rule 15 analysis, the Fourth Circuit counsels that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." <u>Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.</u>, 576 F.3d 172, 193 (4th Cir. 2009). As to Rule 20, persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and...any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

In the present case, although the Court sees no justification for Plaintiff's failure to request leave to add Winston as a party, the Court finds that had amendment been sought, it would have been granted. With respect to Rule 15, given the fact that the case is still in its relative infancy, the Court concludes that allowing amendment would not be

prejudicial to the opposing party. Nor does the Court find that there has been bad faith on the part of the moving party. Further, in light of the analysis below, the Court holds that amendment would not be futile. As to Rule 20, the Court concludes that Plaintiff's claims against each Defendant arise out of the same series of transactions or occurrences and many questions of fact common to all Defendants will likely arise in the action. As a result, the Court will address Plaintiff's claims against Winston.[9]

### 2. Substantive Considerations

Plaintiff's Second Amended Complaint makes practically identical allegations against Winston as it does against Smith. For example, the Second Amended Complaint asserts that Winston, like Smith, received Charisse Mullen's letter regarding Plaintiff's incarceration on December 22, 2009 as well as the Criminal Order ordering Plaintiff's release on January 4, 2010. Second Am. Compl. ¶¶ 13, 15. Moreover, Plaintiff asserts that each duty owed to her by Smith was also owed to her by Winston. See, e.g., Second Am. Compl. ¶¶ 18-21. Plaintiff has also

---

[9] While the Court will address Plaintiff's claims against Winston, there is no doubt that Plaintiff's failure to seek leave to add Winston as a defendant created unnecessary work for Winston. The Court notes that Winston is not precluded from seeking reimbursement for certain costs incurred as a result of Plaintiff's failure to follow proper procedures, such as the costs associated with the portion of her motion to dismiss that addresses Plaintiff's failure to seek leave.

asserted precisely the same claims against Winston - § 1983, False Imprisonment, Negligence, Punitive Damages – as she has against Smith.  The only real difference between the parties as far as Plaintiff's Second Amended Complaint is concerned is that Winston is the Deputy Clerk of Court while Smith is the Clerk of Court.  Second Am. Compl. ¶¶ 2,3.

Given these alleged factual similarities, Winston asserts nearly identical defenses to Plaintiff's claims as have been asserted by Smith.  Having conducted the analysis with respect to Smith above, the Court sees no reason to belabor the points with respect to Winston.  Winston has not argued that her job title as "Deputy" differentiates her in any way, with respect to Plaintiff's claims, from Smith.  Therefore, at this stage in the proceedings, when viewing Plaintiff's Second Amended Complaint in a light most favorable to her, the Court holds that the legal analysis outlined above is applicable to both parties.  As a result, the Court **GRANTS** Winston's motion to dismiss with respect to the Fourth Amendment component of Plaintiff's § 1983 claim as well as her False Imprisonment claim.  However, the Court **DENIES** her motion with respect to the due process component of the § 1983 claim, as well as her negligence claim.

## D. Count V - Punitive Damages against Smith and Winston

In Count V of Plaintiff's Second Amended Complaint, she claims that she is entitled to punitive damages because both

Smith and Winston engaged in "misconduct with actual malice, or such recklessness or negligence as to evince a conscious disregard of Plaintiff's rights." Second Am. Compl. ¶ 40. According to the Supreme Court of Virginia, "punitive damages are warranted not only by malicious conduct, but also by 'negligence which is so willful or wanton as to evince a conscious disregard of the rights of others.'" Etherton v. Doe, 268 Va. 209, 213 (2004) (quoting Booth v. Robertson, 236 Va. 269, 273 (1988)). The Court has gone on to explain that "[w]illful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Id. at 213-14 (quoting Griffin v. Shively, 227 Va. 317, 321 (1984)).

While the factual support for Plaintiff's allegations will be tested at a later point in the proceedings, the Court finds that Plaintiff has sufficiently pled conduct on the part of Smith and Winston that could warrant punitive damages. Plaintiff's Second Amended Complaint paints a picture of Smith and Winston being aware of Plaintiff's incarceration, yet possibly deliberately choosing to ignore her predicament. If such allegations can be proved, punitive damages are certainly plausible.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Boyle's motion to dismiss. As to Count I, the Court concludes that Boyle is not a state actor and therefore cannot be held liable under § 1983. As to Count II, the Court holds that Plaintiff has not alleged sufficient facts to support a claim of false imprisonment against Boyle. With respect to Count III, the Court concludes that, as a public defender, Boyle is immune from Plaintiff's malpractice claim. Since the Court has dismissed the substantive counts against Boyle, no counts remain upon which punitive damages can be based, and therefore, the Court also dismisses Count V against Boyle. Turning to the Smith and Winston motions to dismiss, the Court **GRANTS IN PART** and **DENIES IN PART** each of those motions. Since the Court concludes that Plaintiff has sufficiently alleged a § 1983 violation premised on the Due Process Clause, and both parties are not entitled to "quasi-judicial" immunity, the Court denies the motions to dismiss with respect to Count I. As to Count II, the Court concludes that the facts alleged do not support a cognizable claim of false imprisonment against Smith or Winston. With respect to Count IV, the Court holds that Plaintiff has alleged sufficient facts to support a negligence claim. Moreover, given these surviving claims, the Court declines to dismiss Plaintiff's punitive damage claim in Count V.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

/s/ Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 29 , 2011